ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| OMAR DEL PINO GÁMEZ, Recurrente, v. NEGOCIADO DE IMPUESTO AL CONSUMO, Recurrida. | TA2026RA00003 | REVISIÓN procedente de la Oficina de Apelaciones Administrativas del Departamento de Hacienda. Caso: 2016-PPIVU-1179. Sobre: SUN COOL AIR CONDITIONING CORP., (A) NRC: 0094480-0010 ($21,71.01), (B) NRC: 0094480-0029 ($1,228.00). |
| --- | --- | --- |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 14 de abril de 2026.

El recurso de revisión que atendemos trata sobre la confirmación parcial de una querella instada por el señor Omar Del Pino Gámez (señor Del Pino Gámez), a los fines de impugnar la imposición de ciertas penalidades personales al amparo de la Sección 6080.02 del *Código de Rentas Internas de Puerto Rico de 2011*, Ley Núm. 1 de 31 de enero de 2011, según enmendada, 13 LPRA sec. 30011, *et seq.* (Código de Rentas Internas).

En atención a ello, nos corresponde resolver si la Oficina de Apelaciones Administrativas del Departamento de Hacienda (OAADH) actuó correctamente al confirmar las penalidades impuestas al recurrente en su carácter personal ante el presunto incumplimiento de la corporación que preside con el pago del impuesto sobre ventas y uso (IVU); ello, conforme a la evidencia pertinente a la controversia que nos ocupa, según admitida por el oficial examinador que presidió la vista administrativa adjudicativa.

Evaluadas las sendas posturas de las partes litigantes y la transcripción de la prueba oral (TPO), a la luz del derecho aplicable, **confirmamos** la *Resolución* recurrida, según emitida y notificada por la OAADH el 3 de diciembre de 2025.

I

El señor Del Pino Gámez es el presidente de Sun Cool Air Conditioning Corp. (Sun Cool), un comercio debidamente inscrito en el Registro de Comerciantes del Departamento de Hacienda[1], y el cual es un agente retenedor del IVU para efectos del Código de Rentas Internas.

El 8 de julio de 2016, el señor Del Pino Gámez recibió, por separado, treinta y seis (36) notificaciones de multas administrativas y penalidades, y dos (2) notificaciones de penalidad personal de parte del Área de Rentas Internas del Departamento de Hacienda[2]. Mediante estas últimas, se le informó sobre la imposición de unas penalidades en su carácter personal al amparo de la Sección 6080.02(a) del Código de Rentas Internas, por haber presentado las planillas mensuales del IVU sin haber depositado ni remitido el IVU retenido por la corporación que preside. Estas equivalían al total del IVU dejado de remitir en los periodos contributivos particularizados en dichas notificaciones.

En lo referente al número de Registro de Comerciante 0094480-0010, Sun Cool radicó su planilla mensual del IVU sin remitir el pago correspondiente para los periodos contributivos de abril de 2011, hasta julio de 2014, excluidos aquellos de diciembre de 2012, agosto de 2013 y marzo de 2014. La cantidad dejada de pagar en tal concepto totalizaba $21,712.01. En lo referente al número de Registro de Comerciante 0094480-0029, la corporación incurrió en el mismo acto para los periodos

---

[1] Suncool posee varios números de registro de comerciante, entre ellos, el NRC: 0094480-0010 y el NRC: 00094480-0029. Además, aparece activa en el Registro de Corporaciones del Departamento de Estado, como una corporación con fines de lucro, registro núm. 98,618, cuyo agente residente y presidente es el señor Del Pino Gámez.

[2] Apéndice del recurso, SUMAC TA, entradas núm. 5 al 10. Tal fecha surge del matasellos del servicio postal, pues algunas de ellas tenían fecha del 24 de junio de 2016, mientras otras tenían fecha del 7 de julio de 2016.

de abril y julio de 2014. La cantidad dejada de pagar para tales periodos totalizaba $1,228.00.

En desacuerdo, el 8 de agosto de 2016, el recurrente instó una querella ante la OAADH[3]. Principalmente, objetó la imposición de dichas penalidades[4], y solicitó que tal determinación se dejara en suspenso hasta la resolución final de un pleito incoado ante el Tribunal de Primera Instancia, Sala Superior de San Juan, caso civil núm. SJ2016CV00109 (caso SJ2016CV00109)[5]. Ello, tras aducir que los periodos contributivos y las partidas reclamadas por concepto de las penalidades personales se encontraban presuntamente atadas a sus alegaciones en el referido caso. Sin embargo, nada especificó en cuanto a cómo dicho pleito incidía sobre las penalidades imputadas[6].

El 3 de octubre de 2016, el foro recurrido notificó la querella al Negociado de Impuesto al Consumo (NIC)[7], el cual presentó su contestación a la querella el 3 de noviembre de 2016[8]. A grandes rasgos, el NIC adujo que las penalidades objetadas se impusieron debido a que Sun Cool radicó sus planillas mensuales de IVU sin pago o con pagos incompletos, y fuera del término dispuesto para ello. Asimismo, sostuvo que la responsabilidad personal del señor Del Pino Gámez surgía al amparo de la Sección 6080.02(b) del Código de Rentas Internas, luego de que fuese identificado como presidente de Sun Cool.

---

[3] Apéndice del recurso, SUMAC TA, entrada núm. 4.

[4] En cuanto a las notificaciones de multas administrativas y penalidades, el señor Del Pino Gámez se limitó a señalar que estas no contenían una descripción sobre los fundamentos en las cuales se fundamentan. Sin embargo, en el mismo escrito, citó textualmente que el Departamento de Hacienda emitió las notificaciones con la siguiente descripción: "Multas y penalidades conforme al Código de Rentas Internas de Puerto Rico de 2011, según enmendado (Código) y sus reglamentos, por incumplimiento con las disposiciones del Impuesto sobre Ventas y Uso ("IVU"). Las secciones mencionadas en esta notificación corresponden al Código". *Véase*, apéndice del recurso, SUMAC TA, entrada núm. 4, a la pág. 4.

[5] El caso aludido trata sobre un interdicto provisional, cese y desista, *injunction* preliminar y permanente, impugnación de embargo, falsa representación, y daños y perjuicios.

[6] El señor Del Pino Gámez solamente esbozó que sus alegaciones y los documentos presentados en el caso SJ2016CV00109 contenían los fundamentos por los que entendía que las penalidades personales no eran procedentes, por lo cual se limitó a referir al foro recurrido al expediente judicial.

[7] SUMAC TA, entrada núm. 4, anejo 2, a la pág. 1.

[8] Apéndice del recurso, SUMAC TA, entrada núm. 60.

Tras varias incidencias procesales, la vista administrativa fue celebrada el 19 de marzo de 2025, ante un oficial examinador designado por el secretario del Departamento de Hacienda[9]. Ambas partes comparecieron y presentaron la prueba con la que contaban[10]. En lo pertinente, el señor Del Pino Gámez presentó prueba sobre un plan de pago vigente, que comprendía algunos de los periodos contributivos señalados en las notificaciones.

Además, ofreció prueba, de manera general, sobre pleitos ajenos al caso de marras[11]; inclusive, un caso que contenía referencias a eventos ocurridos entre el 2006 y el 2010[12]. Ello con el fin de argumentar la iliquidez de la deuda y una presunta represalia por parte del Departamento de Hacienda.

Debido a la amplia prueba ofrecida por el señor Del Pino Gámez, el foro recurrido permitió que este detallara su posición de manera concisa mediante un memorando de derecho[13]. Ello, pues el oficial examinador que presidió la vista concluyó que el recurrente había presentado evidencia impertinente a la controversia delimitada en la vista.

El referido escrito fue presentado el 21 de abril de 2025[14]. En este, el recurrente esbozó una serie de argumentos, entre ellos, la existencia de un plan de pago vigente, el requerimiento de incumplimiento intencional con las obligaciones contributivas previo a la imposición de penalidades, la

---

[9] SUMAC TA, entrada núm. 4, anejo 2, a la pág. 3. *Véase*, además, TPO del 19 de marzo de 2025, a la pág. 4.

[10] El NIC compareció por medio del señor Mariano Rolón, Agente de Rentas Internas, quien también fungió como testigo. Por su parte, el señor Del Pino Gámez compareció representado por su abogada y esposa, Elsa A. González Vélez, quien también fungió como testigo.

[11] Ello incluyó el caso SJ2016CV00109.

[12] Surge que, en el 2010, el señor Del Pino Gámez había instado una acción judicial sobre cobro de dinero por incumplimiento de contrato, endoso fraudulento, y daños y perjuicios ante el Tribunal de Primera Instancia, Sala Superior de Carolina, en el caso civil núm. FAC2010-2387 (caso FAC2010-2387), contra, entre otros, una exempleada de Sun Cool. La misma cuenta con una sentencia final y firme, que decretó que la referida corporación fue víctima de fraude entre el 2006 y 2009, lo que ocasionó que esta incumpliera con varias obligaciones pecuniarias y contributivas en dichos periodos.

[13] Apéndice del recurso, SUMAC TA, entrada núm. 63.

[14] *Íd.*, entrada núm. 62, SUMAC TA.

presunta iliquidez de la deuda reclamada por la agencia y la inadmisión de prueba documental presuntamente relevante.

Además, adujo que la imposición de las penalidades objetadas constituía un acto de represalia por parte de la agencia recurrida, y que esta ha asumido una postura de inacción en atender sus reclamos sobre la cantidad adeudada, la cual cuestionó a través de una reclamación ante el Negociado de Servicios al Contribuyente.

Sometido el asunto a la consideración de la agencia, el 3 de diciembre de 2025, la OAADH emitió la resolución objeto de revisión en este recurso[15]. Mediante esta, **el foro recurrido confirmó la imposición de las penalidades personales contra el señor Del Pino Gámez, pero solo en cuanto a los periodos contributivos no cubiertos por el plan de pago activo, que el recurrente mantenía con el Departamento de Hacienda**.

Además, advirtió que su jurisdicción adjudicativa no cubría controversias sobre la corrección de la deuda que facultó la imposición de dichas penalidades, lo cual debía dirimirse ante el Negociado de Servicios al Contribuyente adscrito al Departamento de Hacienda. Por último, puntualizó que, de obtenerse una modificación mediante determinación final de este último negociado, el NIC debía ajustar la cuantía de las penalidades personales.

Inconforme, el 7 de enero de 2026, el señor Del Pino Gámez instó este recurso y señaló la comisión de los siguientes errores:

> Erró la Oficina al interpretar la Sección 6080.02(b)(1) del Código como un estándar de responsabilidad objetiva, cuando el texto estatutario requiere la demostración de "descuido voluntario".

> Erró la Oficina al excluir del récord probatorio la carta de 14 de marzo de 2016 dirigida al Negociado de Recaudaciones División de Cobro (ofc 419) del Departamento de Hacienda y recibida a la mano por su entonces director, Sr. Héctor Gotay Ledoux.

> Erró la Oficina al descartar el fraude cometido por Jaime Fernández Soto (2004-2009) como circunstancia eximente, ignorando la doctrina de daños continuados.

---

[15] SUMAC TA, entrada núm. 4, anejo 2.

Erró la Oficina al ignorar el reconocimiento oficial del funcionario Humberto Nogueras sobre las paridas duplicadas y la inducción fraudulenta de la funcionaria Melissa Borrero.

Erró la Oficina al no considerar el tratamiento diferenciado otorgado por el IRS ante hechos idénticos.

Erró la Oficina al ignorar la determinación judicial de ilegalidad de embargo del 17 de mayo de 2016.

Erró la Oficina al no reconocer que las notificaciones de penalidades adolecen de vicio de nulidad por falta de fundamentación legal.

Erró la Oficina al ignorar la cronología de eventos que sugiere represalia institucional.

Erró la Oficina al no reconocer que el cierre por 134 días y los 10 embargos constituyen circunstancias extraordinarias.

Erró la Oficina al declararse sin jurisdicción para evaluar las disputas sobre las Certificaciones de Deuda, remitiendo al SAC donde consta querella radicada desde octubre de 2016.

Erró la Oficina al indicar que la base de la penalidad proviene de "las planillas radicadas por Suncool" sin especificar a cuáles planillas se refiere.

Erró la Oficina al omitir el análisis técnico de la deuda subyacente que un Oficial Examinador está obligado a realizar conforme a la Sección 6065.01(a)(18).

Erró la Oficina al utilizar selectivamente la sentencia del caso FAC2010-2387 (*Sun Cool Air Conditioning Corp., Et Als vs Oriental Bank, Et Als;*), extrayendo "determinados" datos mientras ignoró determinaciones de hecho y derecho sustantivas que establecen judicialmente que los problemas con el IVU fueron causados por el fraude de un tercero.

Erró la Oficina al admitir como evidencia la querella radicada ante el SAC el 17 de octubre de 2016 y luego ignorar completamente su contenido sustantivo, negándose a evaluar las irregularidades documentadas mientras impuso penalidades basadas en una certificación cuya validez ha sido reiteradamente cuestionada.

Conforme le fuera ordenado mediante *Resolución* del 26 de enero de 2026, el señor Del Pino Gámez presentó la transcripción de la prueba oral debidamente estipulada el 27 de febrero de 2025. Ese mismo día, el recurrente también presentó su alegato suplementario.

Luego de que le concediéramos una prórroga, el 9 de abril de 2026, el NIC compareció, representado por la Oficina del Procurador General de Puerto Rico, y presentó su alegato en oposición.

Con el beneficio de la comparecencia de ambas partes, resolvemos.

II

A

La norma reiterada es a los efectos de que las decisiones de los organismos administrativos merecen la mayor deferencia judicial, pues son estos los que cuentan con el conocimiento experto de los asuntos que les son encomendados. *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021). Además, al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad de la actuación de la agencia. *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013). Debido a que toda sentencia o determinación administrativa está protegida por una presunción de corrección y validez, la parte que acude a este Tribunal de Apelaciones tiene el deber de colocar a este foro en posición de conceder el remedio solicitado. *Morán v. Martí,* 165 DPR 356, 366 (2005).

A su vez, el estándar de revisión judicial en materia de decisiones administrativas se circunscribe a determinar: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hechos de la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo; y, (3) si las conclusiones de derecho fueron correctas. *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010).

Así pues, como norma general, las determinaciones de hechos de organismos y agencias "tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas". *Vélez v. A.R.Pe.*, 167 DPR 684, 693 (2006). Por ello, la revisión judicial ha de limitarse a determinar si la agencia actuó de manera arbitraria, ilegal, irrazonable, o fuera del marco de los poderes que se le delegaron. *Torres v. Junta Ingenieros*, 161 DPR 696, 708 (2004).

De otra parte, las conclusiones de derecho de las agencias administrativas serán revisables en toda su extensión. *Vázquez, et al. v.*

*DACo*, opinión de 21 de mayo de 2025, 2025 TSPR 56, a la pág. 28, 215 DPR ___; *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR, a la pág. 941. Sin embargo, esto no significa que los tribunales podemos descartar libremente las conclusiones e interpretaciones de la agencia. *Otero v. Toyota*, 163 DPR 716, 729 (2005).

En fin, como ha consignado el Tribunal Supremo de Puerto Rico, la deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales. *Super Asphalt v. AFI y otro*, 206 DPR, a la pág. 819, que cita a *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).

B

Dentro de nuestro sistema tributario, el Estado exige a todos los comerciantes que cobren a sus clientes el IVU y que lo remitan al Departamento de Hacienda, no más tardar del décimo (10mo) día del mes siguiente al de la transacción. Sec. 4020.05, 4042.02 y 4042.03 del Código de Rentas Internas, 13 LPRA sec. 32025 y 32102-03. Para asegurar la mayor captación posible de dicho impuesto, la Asamblea Legislativa incorporó a nuestra legislación contributiva un mecanismo alterno de recaudo que está codificado en la Sec. 6080.02 del Código de Rentas Internas, 13 LPRA sec. 33332. En lo pertinente, estableció lo siguiente:

> (a) *Penalidad.*— Toda <u>persona responsable</u>, según descrita en el inciso (b) de esta sección, **estará sujeta personalmente**, en adición [*sic*] a cualquier otra penalidad establecida en este Código, **a una penalidad igual a la cantidad total de la contribución evadida, dejada de recaudar, dejada de retener, dejada de depositar, dejada de ser reportada o dejada de ser entregada por la entidad o persona** (según dicho término se define en la sec. 33089

de este título) sujeta a dicha obligación por cualquier parte de este Código. […]

 (b) *Personas responsables --*

(1) Todo principal oficial de operaciones, **presidente**, principal oficial financiero, principal oficial de contabilidad, contralor y todo oficial sirviendo en una posición similar, de una entidad o persona (según dicho término se define en la Sección 6030.19 de este Código) con la obligación de recaudar, retener, dar cuenta de y entregar en pago cualquier contribución o impuesto establecido por cualquier Subtítulo de este Código;

(2) Toda persona cuya responsabilidad, deber, función u obligación en una entidad o persona (según dicho término se define en la Sección 6030.19 de este Código) sea la de recaudar, retener, depositar, dar cuenta de, o entregar en pago cualquier contribución o impuesto establecido por cualquier Subtítulo de este Código, que a sabiendas dejare de recaudar o de dar cuenta de y entregar en pago, fielmente, dicha contribución, en la forma y términos establecidos en cualquier Subtítulo de este Código; y

(3) Toda persona que a sabiendas intentare de algún modo evadir o derrotar cualquier contribución impuesta por cualquier Subtítulo de este Código o el pago de la misma. […].

(Énfasis nuestro).

Sabido es que, "[c]uando la letra de la ley es clara y libre de ambigüedad, no debe ser menospreciada bajo el pretexto de cumplir su espíritu". Art. 19 del Código Civil de 2020, 31 LPRA sec. 5341; *Cordero et al. v. ARPe et al.,* 187 DPR 445, 456 (2012).

C

De ordinario, las Reglas de Evidencia no son aplicables a los procedimientos administrativos. 3 LPRA sec. 9653(e). Aunque el ordenamiento jurídico administrativo no opera en total abstracción de las Reglas de Evidencia, su naturaleza está predicada en la solución justa, rápida y económica de los procedimientos. *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1004-1005 (2011).

Para que una evidencia sea admisible debe cumplir con los requisitos que establecen las Reglas de Evidencia. Como primer requisito, toda evidencia debe satisfacer el requisito de pertinencia. Regla 401 de las de Evidencia, 32 LPRA Ap. VI. "En la práctica, evidencia pertinente es la que arroja luz o tiene algún valor probatorio, por mínimo que sea, para

adjudicar la acción." E. L. Chiesa Aponte, *Reglas de Evidencia Comentadas*, Ed. Situm, 2016, pág. 72.

Durante la celebración de la vista administrativa, el funcionario que preside la misma tiene la facultad para excluir aquella evidencia que estime como impertinente, inmaterial, repetitiva, o que sea inadmisible por fundamentos de índole constitucional o legal, cuyos cimientos se hallen en privilegios evidenciarios reconocidos por los tribunales de Puerto Rico. 3 LPRA sec. 9653(c).

En lo pertinente, el Departamento de Hacienda adoptó el *Reglamento de Procedimiento Adjudicativo ante el Departamento de Hacienda*, Reglamento Núm. 9505 de 25 de septiembre de 2023 (Reglamento Núm. 9505), para reglamentar los procedimientos de adjudicación formal. En su Art. 19, dicho reglamento establece que:

> El Foro Administrativo tendrá autoridad para disponer de todos los asuntos procesales y relacionados con la prueba a presentarse en el caso, incluyendo los incidentes relativos al descubrimiento de prueba. Podrá asimismo emitir las resoluciones interlocutorias que fueran necesarias.
> .          .          .          .          .          .          .          .

De otra parte, conforme a la Regla 105 de las de Evidencia, este foro apelativo no dejará sin efecto una determinación de admisión o exclusión errónea de evidencia ni revocará por ello una sentencia o decisión, a menos que: (1) la parte perjudicada con la admisión o exclusión hubiere satisfecho los requisitos de objeción, fundamento u oferta de prueba establecidos en la Regla 104, y (2) el tribunal que considera el señalamiento estime que la evidencia admitida o excluida fue un factor decisivo o sustancial en la sentencia emitida y cuya revocación se solicita.

### D

El Departamento de Hacienda, a través de su página de internet[16], contiene documentos guía[17] sobre los procedimientos adjudicativos y las

---

[16] http://www.hacienda.pr.gov/.

[17] La Sección 1.3 (c) de la Ley Núm. 38-2017, *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, define **documento guía** como:

> Significa un documento físico o electrónico de aplicabilidad general desarrollado por una agencia, que carece de fuerza de ley, pero expresa

apelaciones administrativas aplicables a ciertos contribuyentes. En lo

pertinente, dispone lo siguiente sobre los procedimientos adjudicativos:

> ¿Cuándo la Oficina de Apelaciones Administrativas es el lugar adecuado para el contribuyente?
>
> La Oficina de Apelaciones Administrativas es el lugar adecuado para el contribuyente, si cumple con los siguientes requisitos:
>
> **La carta recibida de Hacienda explica su derecho a objetar una determinación adversa del Departamento**, a través de la Oficina de Apelaciones Administrativas (antes Secretaría de Procedimiento Adjudicativo).
>
> No está de acuerdo con la determinación adversa. Un ejemplo de una determinación adversa puede ser una multa, una denegatoria de exención, un error matemático, entre otros.
>
> ¿Cuándo la Oficina de Apelaciones Administrativas **no** es el lugar adecuado para usted?
>
> La Oficina de Procedimiento Adjudicativo no es el lugar adecuado para usted, si se cumple con alguno de los siguientes requisitos**:**
>
> La carta recibida de Hacienda es un Requerimiento de Cobro y no hace mención de la Oficina de Apelaciones Administrativas.
>
> La única preocupación es que no puede pagar la cantidad que debe.
>
> Recibió de Hacienda una Notificación de Deficiencia Contributiva.
>
> Recibió una denegatoria de reintegro o crédito, podrá recurrir ante el Tribunal de Primera Instancia.
>
> .      .      .      .      .      .      .      .

(Énfasis nuestro)[18].

Asimismo, la misma página de internet contiene una sección

referente a su organización institucional, mediante la cual los

contribuyentes pueden consultar los diferentes recursos que se les proveen

---

la interpretación de la agencia sobre alguna legislación, la política pública de la agencia o que describe cómo y cuándo la agencia ejercerá sus funciones discrecionales. Incluye interpretaciones oficiales, según definidas en esta Ley. Este término no incluye documentos que son reglamentos o reglas según definidas en esta Ley.

[18] *Véase,* http://www.hacienda.pr.gov/apelaciones/procedimiento-adjudicativo (última visita, 9 de abril de 2026).

para manejar sus asuntos fiscales, entre los que se encuentran las secretarías, los negociados y las áreas adscritas a la referida agencia[19].

Entre las unidades operacionales del Departamento de Hacienda se encuentra la Secretaría Auxiliar del Área de Rentas Internas, cuya responsabilidad es administrar el Código de Rentas Internas junto a otras leyes fiscales, así como otros asuntos, como la contribución sobre ingresos y los impuestos sobre los artículos de uso y consumo[20]. A estos efectos, el Área de Rentas Internas contempla varios negociados para atender de manera particularizada los asuntos que administra, entre los cuales se encuentran el Negociado de Impuesto al Consumo y el Negociado de Servicios al Contribuyente.

En cuanto a las responsabilidades asignadas al Negociado de Impuesto al Consumo, el Departamento de Hacienda consignó lo siguiente:

> Este Negociado es responsable de desarrollar, administrar y evaluar los procedimientos, funciones y actividades necesarias para llevar a cabo la imposición de arbitrios, **el impuesto sobre ventas y uso**. Provee atención inmediata al contribuyente, incluyendo, pero sin limitarse a, la orientación básica respecto los Subtítulos D y E del Código y ciertas leyes especiales, incluso los reglamentos aplicables. También, **fiscaliza el cumplimiento con las disposiciones estatutarias y reglamentarias de dichos subtítulos**[21], así como la entrada de artículos a la jurisdicción del Estado Libre Asociado de Puerto Rico. […]. **Además, procesa la planilla mensual y anual de impuesto sobre ventas y uso**.
>
> . . . . . . . . . . .

(Énfasis nuestro)[22].

Por su parte, el Negociado de Servicios al Contribuyente tiene la responsabilidad de:

> **[A]tender a los contribuyentes y representantes que visitan los Centros de Servicios para solicitar servicios relacionados a reclamaciones de reintegros, errores matemáticos, reintegros acreditados a deudas, reclamaciones de contribución patronal y todo asunto**

---

[19] *Véase*, https://hacienda.pr.gov/sobre-hacienda/organizacion (última visita, 10 de abril de 2026).

[20] *Véase*, https://hacienda.pr.gov/sobre-hacienda/organización/secretaria-negociados-y-areas/unidades-operacionales/area-de-rentas-internas (última visita, 10 de abril de 2026).

[21] Se refiere a los Subtítulos D y E del Código de Rentas Internas, los cuales regulan los asuntos sobre el Impuesto sobre Ventas y Uso (IVU) y los impuestos sobre bebidas alcohólicas.

[22] Véase, https://hacienda.pr.gov/sobre-hacienda/organizacion/secretaria-negociados-y-areas/unidades-operacionales/area-de-rentas-internas (última visita, 10 de abril de 2026).

> **contributivo relacionado a las planillas de individuos, corporaciones y arbitrios**. También, recibe, evalúa, resuelve y contesta la correspondencia relacionada con reclamaciones de índole contributiva y consultas de carácter general. Además, tramita solicitudes de copias simples o certificadas de planillas y certificaciones de radicación de planillas. Orienta en los trámites relacionados con las planillas de herencias y donaciones. Tramita el Certificado de Relevo Total o Parcial de la Retención en el Origen sobre Pagos por Servicios Prestados (7%).

(Énfasis nuestro)[23].

III

En primer lugar, debemos puntualizar que, en el cuarto, el quinto, el noveno, el undécimo y el duodécimo error, el recurrente esbozó varios argumentos que, además de exponerlos de manera general, fueron formulados ante este Tribunal por primera vez. Lo anterior nos impide ejercer nuestra función revisora, por lo que no consideraremos los planteamientos relacionados a dichos señalamientos[24]. Por ello, limitamos nuestra revisión al resto de los errores señalados.

El señor Del Pino Gámez señala de manera dispersa un total de nueve (9) errores revisables. No obstante, una lectura integral de sus argumentos revela que estos se reducen a cuatro (4) planteamientos medulares; a saber, que la OAADH se equivocó al excluir parcial o totalmente la prueba documental ofrecida; al no considerar la ausencia de fundamento legal en las notificaciones de penalidad personal que le fueron remitidas; al interpretar que la Sección 6080.02(b)(1) del Código de Rentas Internas le impone responsabilidad personal por incumplimiento bajo un estándar objetivo; y, al declararse sin jurisdicción para evaluar la corrección de las cuantías adeudadas en las certificaciones de deudas del IVU emitidas por el Departamento de Hacienda.

---

[23] *Véase*, https://hacienda.pr.gov/sobre-hacienda/organizacion/secretaria-negociados-y-areas/unidades-operacionales/area-de-rentas-internas (última visita, 10 de abril de 2026).

[24] Véase, *Acevedo Sepúlveda v. Depto. Salud*, 191 DPR 28, 33 (2014); *Torres Martínez v. Torres Ghigliotty*, 175 DPR 87, 97 (2007); *De Jesús Viñas v. González Lugo*, 170 DPR 499, 514 (2007).

En atención a cómo los errores señalados se relacionan entre sí, comenzaremos nuestra discusión con el décimo error, relacionado a la jurisdicción de la OAADH sobre la controversia ante su consideración.

Con relación a este aspecto, el señor Del Pino Gámez aduce que el foro recurrido erró al declararse sin jurisdicción para evaluar las disputas sobre la corrección de las cuantías contenidas en las certificaciones de deudas utilizadas para imponer las penalidades personales objetadas, y con ello remitir tal controversia al Negociado de Servicios al Contribuyente. Alega que tal determinación contradice las instrucciones en cuanto al lugar donde debe acudir un contribuyente para solicitar algún servicio, impartidas por el Departamento de Hacienda a través de las notificaciones que emite.

Cual citado, la OAADH es el foro con competencia para atender procedimientos adjudicativos cuando la notificación emitida informa al contribuyente de su derecho a recurrir a dicho foro de una determinación adversa. Por otro lado, el NIC tiene la responsabilidad de fiscalizar el cumplimiento con las disposiciones del Código de Rentas Internas relacionadas al Impuesto de Ventas y Uso, así como desarrollar los procedimientos necesarios para su imposición. De otra parte, el NIC atiende y resuelve reclamaciones de índole contributiva, así como aquellas sobre reintegros y errores matemáticos e, incluso, todo asunto contributivo relacionado a las planillas de individuos, corporaciones y arbitrios.

El señor Del Pino Gámez inició un proceso adjudicativo ante la OAADH para impugnar la determinación adversa relacionada a la imposición de penalidades en su carácter personal, tal cual le advertían las notificaciones fechadas el 24 de junio de 2026, y enviadas el 8 de julio de 2016[25]. Sin embargo, el recurrente pretendió impugnar mediante dicho procedimiento las cuantías adeudadas por concepto del IVU, tal cual surgen de las certificaciones de deuda utilizadas por el NIC para imponer las penalidades objetadas. Ello, a pesar de que las mismas claramente

---

[25] *Véase*, apéndice del recurso, SUMAC TA, entradas núm. 9 y 10.

advertían que cualquier reclamación sobre su contenido debía presentarse ante el Negociado de Servicios al Contribuyente.[26]

A la luz de lo anterior, concluimos que la facultad para atender la disputa propuesta por el recurrente sobre tales certificaciones solo la ostenta el Negociado de Servicios al Contribuyente. En consecuencia, colegimos que la OAADH actuó correctamente al delimitar su jurisdicción adjudicativa en cuanto a la existencia de una deuda por concepto del pago no remitido del IVU, y sobre si las penalidades personales fueron impuestas a la persona responsable de tal obligación, conforme a los incisos (a) y (b)(1) de la Sección 6080.02 del Código de Rentas Internas. Por tanto, el foro recurrido no incurrió en el error señalado.

Nos resta atender el resto de los errores señalados a la luz de la controversia delimitada por el foro recurrido.

Con relación al primer error, el señor Del Pino Gámez aduce que la OAADH erró al interpretar la Sección 6080.02(b)(1) de manera tal que le responsabilizó objetivamente ante el incumplimiento de Sun Cool con la obligación de remitir el pago del IVU recaudado. Arguye que el precitado estatuto dispone unas presuntas excepciones que contradicen tal interpretación, las cuales presuponen que las penalidades solo deben imponerse a quien incumple deliberadamente con la referida obligación. Además, insiste que esto fue afirmado por el Tribunal Supremo de Puerto Rico en *Córdova Dexter v. Sucn. Ferraiuoli*, 18 DPR 541 (2011).

Luego de evaluar el texto claro del precitado inciso, no hallamos lenguaje alguno que nos mueva a concluir que existe el presunto requisito de incumplimiento voluntario al que alude el recurrente. Igualmente, el caso citado por dicha parte es distinguible del caso que nos ocupa, en tanto el mismo discute un estatuto del Código de Rentas Internas federal, y nada dispone en cuanto la controversia que nos ocupa.

El señor Del Pino Gámez no presentó evidencia alguna que estableciera que existía otra persona en la cual recayera la

---

[26] *Véase*, apéndice del recurso, SUMAC TA, entrada núm. 61, a las págs. 4, 6-9.

responsabilidad, deber, función u obligación de entregar el correspondiente pago del IVU en las planillas radicadas para los periodos imputados y que incumpliera deliberadamente con los mismos[27], o que a sabiendas intentase evadir el pago del IVU[28], lo cual habría activado la aplicación de los incisos que sí requieren una conducta de incumplimiento voluntario.

En consecuencia, el NIC le impuso responsabilidad al recurrente, como presidente de Sun Cool, tal cual lo faculta el inciso (b)(1) de la Sección 6080.02. Ante ello, coincidimos con la interpretación del foro recurrido sobre la responsabilidad objetiva que impone la Sección 6080.02(b)(1) del Código de Rentas Internas, por lo que este no incurrió en el referido error.

En lo que respecta a su séptimo error, el señor Del Pino Gámez alega que la OAADH erró al no reconocer que las notificaciones de penalidades emitidas por el NIC adolecen del vicio de nulidad. Arguye que las referidas notificaciones no informan el fundamento legal sobre el cual el Departamento de Hacienda impuso las penalidades.

Evaluado el contexto de su escueta argumentación, presumimos que el recurrente se refiere las notificaciones de multas administrativas y penalidades, que le fueran remitidas también el 8 de julio de 2016[29]. Sin embargo, estas son independientes a las notificaciones de penalidades personales, a las cuales el foro recurrido limitó su revisión[30]. Aun si aplicáramos el señalamiento de error a las notificaciones que sí nos ocupan, podemos apreciar que las mismas detallan expresamente las disposiciones del Código de Rentas Internas sobre las cuales el NIC

---

[27] 13 LPRA sec. 33332(b)(2).

[28] 13 LPRA sec. 33332(b)(3).

[29] *Véase*, apéndice del recurso, SUMAC TA, entradas núm. 7 y 8.

[30] A pesar de que las notificaciones de multas administrativas no formaron parte de la controversia delimitada por la OAADH, el recurrente aludió a las mismas en su querella. No obstante, adicional a su señalamiento de error, nada objetó específicamente sobre ellas. Además, según mencionamos anteriormente, el recurrente citó que estas informaban que su emisión surgía "conforme al Código de Rentas Internas de Puerto Rico de 2011, según enmendado (Código) y sus reglamentos, por incumplimiento con las disposiciones del Impuesto sobre Ventas y Uso (IVU)."

impuso las penalidades objetadas. Por consiguiente, la OAADH no incurrió en dicho error.

Por último, el señor Del Pino Gámez dedica el grosor de su escrito a señalar en su segundo, tercero, sexto, octavo, decimotercero y decimocuarto error que la OAADH erró al no admitir la totalidad de la prueba documental por él ofrecida. Aduce que el foro recurrido debió tomar en consideración la totalidad del expediente judicial del caso SJ2016CV00109 y el del caso FAC2010-2387, los cuales presuntamente demuestran las razones por las cuales la corporación que preside se encuentra en incumplimiento con la entrega del pago del IVU recaudado.

Asimismo, arguye que el foro recurrido debió admitir el contenido de una carta enviada al entonces jefe de la División de Cobros del Negociado de Recaudaciones[31], un tal señor Gotay, así como una supuesta reclamación presentada ante el Negociado de Servicios al Contribuyente. Insiste en que estas última documentan, en lo pertinente, sus esfuerzos para cumplir con su obligación contributiva para los años en que le imputan las penalidades personales.

Según el marco legal previamente expuesto, no cabe duda de que el oficial examinador que presidió la vista administrativa del 19 de marzo de 2025 tenía plena facultad para denegar la admisión de cualquier evidencia que estimara impertinente. Tras evaluar la prueba excluida y ofrecida por el recurrente, coincidimos con la apreciación realizada por dicho funcionario.

El oficial examinador fue enfático en cuanto a la impertinencia de la prueba ofrecida, pues la misma no atendía la controversia delimitada en la vista administrativa —con el entendimiento expreso de las partes comparecientes—[32]; a saber: **si existía una deuda y si el recurrente era responsable del incumplimiento tributario como presidente de Sun Cool**.

---

[31] *Véase*, TPO del 19 de marzo de 2025, a la pág. 59.

[32] *Véase*, TPO del 19 de marzo de 2025, a las págs. 29, 40-41, 52-53, 73 y 86.

A pesar de ello, el señor Del Pino Gámez obstinadamente refirió al foro recurrido al expediente de dos (2) pleitos judiciales cuyas causas de acción son distintas a las presentadas en su querella, o atienden hechos acaecidos en años previos y sin relación alguna a los periodos contributivos comprendidos entre el 2013 y 2014. Es decir, el caso SJ2016CV00109 fue instado con el fin de impugnar ciertos embargos realizados por el Departamento de Hacienda, y el caso FAC2010-2387 resuelve finalmente hechos acaecidos previo al 2010.

El recurrente nada especificó ni pudo establecer sobre la presunta relación entre las alegaciones aludidas y el incumplimiento imputado durante los periodos contributivos del 2013 y 2014, ni precisó los argumentos para sustentar su posición en cuanto a la improcedencia de las penalidades personales que le fueron impuestas.

A igual conclusión llegamos en cuanto a los supuestos esfuerzos realizados ante el Departamento de Hacienda para resolver su situación contributiva relacionada al pago del IVU, presuntamente documentados por la carta al señor Gotay, y por la reclamación iniciada ante el Negociado de Servicios al Contribuyente en el 2016. La referida carta alude a una auditoría y la corrección de planillas ajenas a los periodos contributivos del 2013 y 2014, como resultado del fraude del que fue víctima la corporación con anterioridad al 2010. Además, surge que, a través de ella esa carta, el señor Del Pino Gámez intentó impugnar, nuevamente, las partidas contenidas en certificaciones de deudas emitidas hasta la fecha en que preparó dicha carta. Con relación a la existencia de la supuesta reclamación ante el Negociado de Servicios al Contribuyente, no hallamos prueba documental alguna que sustentara tal alegación[33].

De esta manera, concluimos que la prueba ofrecida por el señor Del Pino Gámez, en efecto, no estuvo dirigida a refutar ninguno de los aspectos

---

[33] Tal como expone el recurrido en su escrito en su oposición al recurso, el foro administrativo solo reconoció en su *Resolución* final las alegaciones del recurrente en cuanto a la presunta existencia de unas reclamaciones radicadas ante dicho Negociado entre el 2015 y 2016. Sin embargo, no surge que tales solicitudes fueran sometidas como evidencia, ni admitidas por el foro recurrido.

evaluados durante la vista administrativa, sino que reiteradamente perseguía impugnar la cantidad adeudada, y las acciones del Departamento de Hacienda sobre los embargos que le fueran realizados en el 2016.

Dicho de otro modo, nada en los argumentos ni en la extensa evidencia presentada por el recurrente —la cual adolece de falta de pertinencia— nos mueve a colegir que la evidencia excluida por el oficial examinador fuese un factor decisivo en la resolución final emitida, en tanto no demuestran razón alguna por la que Sun Cool no pudo cumplir con su deber contributivo durante los periodos contributivos a los cuales se le imputan las penalidades personales, ni por qué el señor Del Pino Gámez estaba exento de responder personalmente como presidente de Sun Cool, conforme a la letra clara de la Sección 6080.02(b)(1). Por lo tanto, colegimos que la OAADH tampoco incurrió en los errores señalados.

Reiteramos que el señor Del Pino Gámez recurre de dos (2) notificaciones sobre penalidades personales, las cuales posteriormente quedaron exclusivamente circunscritas a los años contributivos 2013 y 2014[34]. Ningún otro periodo se encuentra habilitado para revisión, dado que no fueron reclamados por el NIC ni forman parte del plan de pago vigente, reconocido por la OAADH durante la vista administrativa. Asimismo, tal cual afirmó el foro recurrido, las penalidades personales proveen mecanismos alternos de recaudación ante el incumplimiento de Sun Cool con la obligación contributiva objeto de controversia.

Ello se traduce en que el señor Del Pino Gámez no queda desprovisto de remedio alguno frente a tales penalidades. Tal como fue orientado, el cobro de estas queda supeditado a la determinación final que emita el Negociado de Servicios al Contribuyente sobre la corrección de la deuda, o a que Sun Cool remita los pagos adeudados. Es decir, en caso de este obtener una reducción o una eliminación de la deuda impugnada,

---

[34] Ello, debido a la existencia de un plan de pago presuntamente activo para los periodos contributivos del 2011 y 2012, según validado por el foro recurrido en la *Resolución* objeto de revisión.

tales penalidades personales conllevarían la misma consecuencia. Después de todo, la imposición de estas penalidades es un mecanismo subsidiario de cobro, y no alberga naturaleza punitiva alguna.

IV

En mérito de lo antes expuesto, este Tribunal **confirma** la resolución recurrida.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones